UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BYRON ADILIO ALFARO-SANDOVAL,<br><br>    Defendant. | CASE NO.  1:22-CR-00131-JLT-SKO-3<br><br>ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE AND EXONERATING CASH BOND.<br><br>(Docs. 372, 373) |

The government moves the Court to dismiss the indictment *without* prejudice as to this defendant and to vacate all future dates currently set in this matter in the interest of justice. (Doc. 372) The defense moves the Court to dismiss the action *with* prejudice and to exonerate the cash bond that had been issued to secure his attendance at court proceedings and compliance with terms of pretrial supervision. (Doc. 373) For the reasons set forth below, the government's motion is **GRANTED**, and the defense motion is **GRANTED in PART** as it relates to the exoneration of the bond.

**I.      Background**

Beginning in early 2021, federal law officers from the Department of Homeland Security began investigating a suspected drug trafficking organization involving multiple defendants. (Doc. 16) During this investigation, they attested that they observed Byron Adilio Alfaro-Sandoval and another person, transporting 60 pounds of 99% pure methamphetamine from a stash house and delivering it to another location in apparent preparation for a large-scale drug sale. *Id*. at 13-14. Based upon this evidence and

1

other evidence, Mr. Alfaro-Sandoval and his codefendants were charged in a criminal complaint filed on April 21, 2022, with conspiracy to distribute and possess with the intent to distribute controlled substances according to 21 U.S.C. §§ 846, 841(a)(1), (b)(1). (Doc. 16)

Mr. Alfaro-Sandoval made his first appearance on April 27, 2022 (Doc. 20) and was eventually released from custody on terms of pretrial supervision (Doc. 52) This required him to post "a $30,000 cash bond, [and a] $6000 unsecured bond . . ." (Docs. 52, 57, 58, 63, 64) Amparo Cordero posted the $30,000 secured cash bond and Manfredo Alfaro Sandoval posted the unsecured bond of $6,000. (Doc. 63)

A few days later, Mr. Alfaro-Sandoval was indicted on charges of conspiracy to distribute and possess with the intent to distribute methamphetamine and heroin according to 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and possession with intent to distribute methamphetamine according to 21 U.S.C. § 841(a)(1), (b)(1)(A). (Doc. 71) Mr. Alfaro-Sandoval pleaded not guilty. (Doc. 72) The matter proceeded through discovery and though a trial date was set, the trial was continued several times for various reasons, including because Mr. Alfaro-Sandoval had changes in counsel.

On July 7, 2025, Mr. Alfaro-Sandoval was arrested and detained due to claims that he was in the country unlawfully. (Doc. 331) The government's attorney and the defense attorney learned beforehand that his arrest was going to occur, and that "imminent deportation" was likely. (Doc. 340 at 3-4) Consequently, the government asked the Court to detain the defendant to prevent is upcoming arrest and deportation, but the Court agreed with the defense that the circumstances did not warrant detention and denied the request. *Id.*

Once again, the government sought to reopen the question of detention because it claimed that at the time he was interviewed in relation to his pretrial release, he lied about being in the country on a valid visa. (Doc. 336 at 2-3) In addition, the government had obtained evidence that the defendant was "heavily involved" in marijuana sales and had access to weapons, "including an FBG-6 Flashbang (a type of grenade) and a Draco semi-automatic pistol (a type of compact AK-47 pistol, known for its short barrel) with two large capacity magazines, as well as a photo contained within the defendant's photo folder of a gun similar to a Glock." *Id.* at 3.) The defendant opposed the motion (Doc. 340), arguing that detention was not required as demonstrated by his compliance with pretrial release conditions and

2

because it was known at the time of his original detention hearing that he was "undocumented." *Id.* Ultimately, the Court denied the motion to reopen the question of detention. (Doc. 356)

On the day of the hearing on the motion to reopen detention, Mr. Alfaro-Sandoval refused to be transported to court, despite that the court had issued a writ requiring his transport and despite that transportation officers were prepared to bring him to court. (Doc. 348, 349) By this time, defense counsel reported that she had not spoken to her client since his detention by ICE, about one month earlier. (Doc. 342, 343) After this hearing, the Court granted the government's motion to have the defendant brought to court and to use reasonable force to do so. (Doc. 350, 352) Before force could be used, officers were required to read the Court's order telling him that he was required to appear in court in a language he understood. (Doc. 352) The Court had been advised that his refusal to come to court previously was due to advice from his immigration lawyer, which failed to distinguish this criminal action from his immigration proceedings, and which caused him confusion. *Id.* at 1, n. 1.

The defense attorney filed a motion to quash the extraction order until after she had an opportunity to talk with her client. (Doc. 353) Consulting with him had been delayed due, in part, to counsel needing to be away for two weeks for personal reasons and because a scheduled meeting with the defendant and his immigration attorney had been cancelled by ICE. *Id.* Due to the representations of defense counsel, that the failure of the defendant to appear was due to a mistake and lack of information by the defendant, the Court withdrew the extraction order, but required the defendant to execute a Rule 43 waiver, if he chose not to appear in the future. (Doc. 358)

On January 5, 2026[1], the Court set the matter for trial to occur on March 31, 2026 and for a status conference to occur on January 21, 2026 (Doc. 367). The Court allowed that if the status conference was unneeded that counsel could file a stipulation to vacate it. *Id.* Instead, on January 14, 2026, counsel filed a joint report indicating that the status conference should remain on calendar. (Doc. 369) Nevertheless, the next day, the government sought to dismiss the case without prejudice and in the interest of justice. (Doc. 372) The same day, the defense filed its motion to dismiss the case with prejudice and to exonerate the bonds. (Doc.373)

---

[1] The Court is aware that the government's attorney, who had prosecuted this case since its inception, died suddenly in early December 2025 and new government counsel substituted into this case. (Docs. 365, 366)

**II.      The competing motions**

The defense motion asserts that the matter should be dismissed with prejudice because though the government had sought to transport the defendant to court for one detention hearing, the government failed to transport him for the continued detention hearing. (Doc. 373 at 3) Counsel reports that she had provided information to his immigration attorney to discuss with him at an upcoming meeting[2], but that the meeting was cancelled by the detention facility. *Id*. at 3. Finally, she asserts that the defendant was deported by the government and that in doing so, the government deprived the defendant of his right to trial. (Doc. 373 at 2) Counsel argues this is a violation of his right to a speedy trial and a violation of due process. *Id*. at 4-5. Counsel argues the only appropriate remedy is dismissal of the action with prejudice.

In response, the government submitted documents that demonstrate that on August 19, 2025, the defendant requested to depart the country voluntarily. (Doc. 375 at 2, 6-9) However, the Immigration Judge denied the request and ordered him removed. *Id*. The defendant did not appeal this order, and he was released on bond that deported. *Id*. The government also cited numerous cases demonstrating that the Court must dismiss a case without prejudice except in limited circumstances including where the government acts outrageously such as by violating the defendant's due process rights. (Doc. 375 at 1)

The Court observes that at no time did the defendant seek a speedy trial first and that he had waived his right to a speedy trial on every occasion. Moreover, though it is unfortunate that one meeting with the immigration counsel was cancelled, the court lacks sufficient information about that event to know what to make of it. Importantly, from August 25, 2025 through the date of this motion, counsel never sought the Court's intervention to gain access to the defendant, and the Court has no information that she was unable to contact him during that interval—or that she even tried to contact him.[3]

This is not a situation in which there is any indication that the defendant's removal from this

---

[2] Doc. 353 at 7-8.

[3] For the proposition that the government "blocked scheduled attorney-client consultations, and the defendant was denied access to counsel at critical stages, "she cites an earlier-filed document--Alfaro Sandoval Opp'n to Cell Extraction, pp. 10-12—but this document refers only to the August 1, 2025 meeting that was scheduled between the defendant and his immigration attorney and the refusal of the USMS to allow counsel to speak with the defendant during his arrest in July 2025. ["Here, ICE detention agents blocked previously scheduled attorney-client contact on August 1, 2025, before the August 6, 2025, criminal hearings. USM/ICE also blocked attorney client communications at the time of the arrest and during the arrest and interrogation process."] Counsel does not explain why these contacts constitute "critical stages" of the litigation.

4

country was designed to thwart his trial. In fact, there is no showing that it bore any relation to his upcoming trial.[4] Though, clearly, ICE was aware of his criminal case, there is no other connection between this case and his removal. The trial was not scheduled at the time that the defendant was ordered removed and, in fact, it was not scheduled for trial in March 2026 until about a week before the government filed its motion to dismiss. Moreover, the defense opposed the two attempts by the government to remand the defendant into custody on the criminal case—which would have prevented his deportation and would have allowed his case and his trial to proceed.

Consequently, the Court finds no grounds for the claim that the government acted outrageously or that the defendant was deprived of any of his constitutionally protected rights in this criminal action. Consequently, the government's motion to dismiss the action without prejudice is **GRANTED** and the defense motion to dismiss the action with prejudice is **DENIED**.

On the other hand, the defense is correct that the purposes for the appearance and compliance bonds no longer exist. Thus, the defense motion to exonerate the bonds is **GRANTED**.

**ORDER**

For the reasons set forth, the Court **ORDERS**:

1. The government's motion to dismiss the action without prejudice (Doc. 372) is **GRANTED**. All future hearings, deadlines and the trial are **VACATED**.

2. The defense motion to dismiss the action with prejudice (Doc. 373) is **DENIED**;

3. The defense motion to exonerate the bonds is **GRANTED**;

4. The Clerk of Court is **DIRECTED** to serve a copy of this order on the sureties and return them their property to the addresses on record.

IT IS SO ORDERED.

Dated:    **January 24, 2026**

_Jennifer L. Thurston_____
UNITED STATES DISTRICT JUDGE

---

[4] The opposition argues that the government deprived the defendant of his right to trial, but, notably, he does not oppose dismissal of the action; indeed, he separately moves to dismiss the case. (Doc. 373 at 4 ["This pattern of conduct shows that the Executive Branch, through its agencies, "manufactured the crisis" that now prevents trial."])